UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-139-GWU

PEGGY GARRETT
for A.E.,                                                                               PLAINTIFF

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

## INTRODUCTION

A.E., by and through Peggy Garrett, her mother and legal guardian, appeals from a negative decision on an application for Child's Supplemental Security Income benefits. The case is before the court on cross-motions for summary judgment.

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 <u>strict</u> standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally

1

08-139 Peggy Garrett
for A.E.

equal in severity one of the Listing of Impairments (LOI) found at 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. § 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any LOI sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. Section 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that A.E., a 14-year-old middle school student, suffered from impairments related to attention deficient hyperactivity disorder. (Tr. 15). Despite the child's impairments, the ALJ determined that her condition did not meet, medically equal or functionally equal the requirements of any of the Listing of Impairments sections. (Id.). Therefore, the claimant could not be considered totally disabled. (Tr. 22).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court

08-139 Peggy Garrett<br>for A.E.

must grant the defendant's summary judgment motion and deny that of the plaintiff.

Garrett does not contest the ALJ's finding that her daughter's condition did not meet or medically equal a Listing. The plaintiff does allege that the ALJ erred in failing to find that her daughter did not "functionally equal" a Listing.

In order to "functionally equal" the requirements of a Listing, a claimant must prove she has a "marked" limitation of ability to function in two of the six broad areas of functioning known as domains or an "extreme" limitation of ability to function in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is defined as an impairment which "seriously interferes with your ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is defined as an impairment which interferes "very seriously with your ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3). The six domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself and (6) health and physical well being. 20 C.F.R. § 416.926(a)(b)(1).

In the present action, the ALJ found "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr. 18-20). No limitations were found in the

3

domains of moving and manipulating objects, self-care and health. (Tr. 20-21). Thus, A.E. was not found to "functionally equal" a Listing.

The evidence of record reveals that in the spring of 2006, the Harlan County Public Schools had A.E. undergo an evaluation in order to assess her educational needs as a result of the concerns of her junior high school teacher, Janie Brock. (Tr. 109). The evaluation was led by school psychiatrist Kathie Harris. Harris interviewed the student and spoke with both her teacher and her mother. (Tr. 109-111). Intelligence testing indicated borderline intelligence. (Tr. 111). Achievement testing results were noted to be somewhat higher than expected in view of her cognitive functioning with academic skills noted to be in the low average to average range. (Tr. 112). Joyce Williamson, a special education teacher, observed the young woman in her math and reading classes and reported no serious behavioral problems. (Tr. 111). Brock administered the Independent Behavior-Revised Scales and opined that the claimant's adaptive functioning was in the low average range. (Tr. 112). Harris did not impose any mental restrictions but did make several suggestions to help A.E. improve her academic performance. (Tr. 113-114).

A.E. sought treatment at the Cumberland River Comprehensive Care Center in April of 2006. Among her problems were noted a bad temper, failing to listen to her mother, and picking fights with others. (Tr. 188). She was diagnosed as suffering from an oppositional defiant disorder (ODD). (Tr. 185). Specific mental

limitations were not imposed and the Cumberland River staff did not address the issue concerning whether her condition "functionally equaled" a Listing. However, the claimant's Global Assessment of Functioning was rated at 58. (Id.). Such a GAF suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. This "moderate" level GAF rating does not indicate the existence of "serious" interference in the claimant's abilities in any of the six domains.

Connie Davis, A.E.'s homeroom and science teacher, completed a Teacher Questionnaire evaluating the student's functioning with regard to the six domains as part of the processing of the SSI claim in May of 2006. (Tr. 129-136). In the domain of acquiring and using information, Davis noted slight problems in the areas of comprehending and doing math problems, learning new material, recalling and applying previously learned material, and applying problem solving skills in class discussions. (Tr. 130). No problem was reported in such areas as comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and expressing ideas in written form. (Id.). The teacher indicated that the slight problems appeared to be related to motivation and she noted that the girl's math

5

teacher thought her fully capable when she applied herself. (Id.). With regard to attending and completing tasks, Davis noted "slight" problems in four of 13 areas including changing from one activity to another without being disruptive, completing class and homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace and finishing on time. (Tr. 131). No problems were reported with the other nine listed areas. (Id.). The teacher noted no observed problems in the domains of interacting and relating with others, moving and manipulating objects, caring for herself, and physical well-being. (Tr. 132-135). These modest findings do not suggest a "marked" impairment in any of the domains.

In June of 2006, Psychologist Ann Demaree reviewed the record and completed a Childhood Disability Evaluation Form. (Tr. 194-199). Demaree opined that A.E. would have a "less than marked" limitation in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr. 196). No limitation was found in the other three domains. (Tr. 197). The reviewer noted the reports of aggressive behavior at home but found that the school reports did not reveal major problems. (Tr. 199). The ALJ's findings were consistent with this opinion.

A.E. was also treated at the Daniel Boone Clinic of Appalachian Regional Hospital in September of 2006. Garrett was interested in having her daughter

6

evaluated for Attention Deficit Hyperactivity Disorder (ADHD) after the girl developed problems in school. (Tr. 201). The mother reported that her daughter had a history of good health. (Tr. 203). The young woman was diagnosed with ADHD and placed on medication. (Tr. 212). In February of 2007, her condition was noted to be improved. (Id.). This report also does not support the existence of a disabling condition.

Psychologist Larry Freudenberger, another medical reviewer, saw the record in November of 2006. (Tr. 205-210). Like Demaree, Freudenberger found "less than marked" limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others with no restrictions in the other three domains. (Tr. 207-208).

At a conference in December of 2006, which included Peggy Garrett, Connie Davis, Kathie Harris, Joyce Williamson, Janie Brock and Michael Cox (a school system representative), it was noted that A.E.'s behavior and school performance had improved since she started on medication. (Tr. 176). The young lady was found not to be eligible for special needs services. (Id.). Thus, this school report does not suggest the existence of a disabling condition.

A.E. returned to Cumberland River in August of 2007. Her ADHD diagnosis was noted as well as the prior diagnosis of ODD. (Tr. 247). Her GAF was rated at 57, again suggesting the existence of only "moderate" psychological symptoms.

(Id.). In November of 2007, the young lady reported doing well in school and the clinician noted her condition to be stable. (Tr. 242-243). Thus, these treatment records also do not indicate a "serious" limitation of ability in any area.

Psychologist William Stanley examined A.E. in October of 2007 and reported a diagnostic impression of possible intermittent explosive disorder, ADHD, ODD, and a generalized anxiety disorder. (Tr. 255). Stanley indicated that the claimant would be limited in such areas as adaptation, social interaction, concentration and persistence. (Tr. 256). The examiner rated her GAF at 50, suggesting the existence of "serious" psychological symptoms. (Id.). To the extent that this report might be interpreted to indicate more severe mental problems than those found by the ALJ, the court notes that Stanley was only a one-time examiner whose opinion was offset and outweighed by the reports from Cumberland River, the Daniel Boone Clinic and Harris. Therefore, this opinion was not binding on the ALJ.

Garrett argues that the ALJ failed to properly weigh the evidence from the treating sources and school documents relevant to the domains of functioning as well as failing to provide an adequate explanation as to why her daughter's condition did not "functionally equal" a Listing. However, the court notes that the ALJ reviewed the medical and school records in the text of his decision. (Tr. 16-17). The ALJ noted that he found the claimant's condition to be "less than marked" as to acquiring and using information due to the evidence that her condition improved

after the use of medication. (Tr. 18). He noted that the school records indicated that she could adequately attend and complete tasks and, so, her ability in this area rated as "less than marked." (Tr. 19). The ALJ noted that the school records did not reveal significant behavioral problems which lead to a determination that her limitation in this area was "less than marked." (Tr. 20). The ALJ noted that there was no real evidence of restriction in the other three domains. (Tr. 20-21). The ALJ appears to the undersigned to have properly weighed the evidence and adequately discussed why it did not support her claim. Therefore, the court must reject the plaintiff's argument.

Garrett asserts that Freudenberger rejected the existence of "marked" limitations in part because of a misreading of the handwritten notes from the Daniel Boone Clinic. Freudenberger noted that malingering had been diagnosed by the staff. (Tr. 210). The plaintiff claims that the diagnosis actually reads "analyzing hyperactivity" rather than "malingering and hyperactivity." The undersigned has looked at the document in question and agrees with Freudenberger that malingering was indicated. (Tr. 203). Even if Freudenberger is not considered, the evidence supporting the administrative decision is overwhelming. The treating source at Cumberland River noted only "moderate" mental symptoms, the school personnel did not find that she qualified for special needs services, teacher Davis noted only mild limitations and reported a lack of motivation on the part of the student, and

08-139 Peggy Garrett
for A.E.

Demaree, the other reviewer, also did not find "marked" restrictions. Garrett's own hearing testimony indicates that her daughter's condition improved greatly after she started her medication. (Tr. 44). Therefore, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 25th day of February, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge